UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPTIMA HEALTHCARE, INC.,

                    Plaintiff,                              Case Number 25-13494

v.                                            Honorable David M. Lawson

ASCION, LLC d/b/a REVERIE,

                    Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD AND DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD

The parties reached an impasse over their obligations under a contract to manufacture and supply hospital beds, and they submitted their dispute to arbitration. After extensive (and costly) proceedings, including a week-long evidentiary hearing, the single arbitrator rendered an award in three lengthy written opinions. Displeased with the award, plaintiff Optima Healthcare filed an initiating motion in this Court styled as a request to vacate the award "in part." Defendant Ascion, LLC filed a countermotion to confirm the award and enter judgment. The Court heard the parties' oral argument in open court on May 27, 2026. The crux of the present dispute before the Court is the propriety of the arbitrator's determination of the accountability under the contract of Optima's majority shareholder, Compucase Enterprise Company ("CECO"), which was not a party to the arbitration, and whether a judgment can be enforced against it. The Court finds no basis under federal law to upset the arbitration award and therefore will confirm it. Judgment will enter in favor of Ascion and against Optima. Whether the judgment can be enforced against CECO is not a question properly submitted to the Court for resolution, and the Court expresses no opinion on it. The motion to vacate the award will be denied.

I.

On September 1, 2008, plaintiff Optima and defendant Ascion entered into a "Supply Agreement" under which Optima agreed to sell to Ascion certain electronically controlled hospital beds.  Ascion entered into separate arrangements with its own affiliated entities in Taiwan and China to fulfill its end of the bargain.  Sometime in 2016, non-party CECO became Optima's majority shareholder.

In September 2019, Ascion notified Optima that some of the beds were returned by customers due to control malfunctions.  Ascion then contracted with an unrelated non-party entity for means to repair the malfunctioning units.  In January 2021, Ascion stopped paying Optima's outstanding invoices.  In February 2021, Ascion notified Optima of its claim that Optima was in breach of its warranty obligations covering the beds.  On June 4, 2021, Ascion commenced an arbitration of the dispute by filing a demand for arbitration with the American Arbitration Association.  CECO was not a party to the arbitration.  Ascion made a motion early on to join CECO as a party, but that motion was denied by the arbitrator in a prehearing procedural order.  Nevertheless, one of the issues hotly litigated by the parties at the hearing and afterwards was whether CECO would be held jointly liable for Optima's breach of the contract, because a term of art ("affiliates") used in the contract could be construed to embrace CECO as a party to the contract due to its acquired ownership interest in Optima.

The arbitration proceeding included the filing of hundreds of pages of briefs by the parties in the prehearing phase, and a week-long evidentiary hearing before a single arbitrator that was convened by the arbitrator in October 2024.  After the hearing before the arbitrator, the parties filed hundreds more pages of motions and briefs addressing various issues.  The arbitrator issued

his final decision piecemeal, in three lengthy written awards denoted Partial Final Award I ("PFA I"), Partial Final Award II ("PFA II"), and a Final Award ("FA").

The controversy presently before the Court focuses on the import of a handful of footnotes and definitional recitations included in the arbitrator's award resolving the underlying dispute concerning CECO's status.  First, in a footnote to the arbitrator's first "Partial Final Award" (denoted by the parties as "PFA I"), the arbitrator wrote:

> As noted above, Optima is defined at the outset [in] the Ascion Supply Agreement to include its affiliates and subsidiaries; they are denominated there collectively as "Supplier." For ease of reference, as well as all substantive purposes of this Partial Final Award, the term "Optima" is employed instead of "Supplier" as the collective definition for "Optima Healthcare, Inc, a Private corporation, and its affiliates and subsidiaries. . . ." However, Optima, as used only in Exhibit C-17 with Funet, applies solely to Optima Healthcare, Inc.

Partial Final Award dated Jul. 30, 2025, ECF No. 22-2, PageID.2815.  Second, in Paragraph 253(2) of PFA I, the arbitrator stated as part of his substantive findings the following:

> The Sole Arbitrator adjudges and declares that CECO was and is an "affiliate" of Optima, as Optima (the "Supplier") is defined in the Ascion Supply Agreement, at times relevant and material to this proceeding.

*Id.* at PageID.2995.  Third, in Paragraph 55(4) of his Partial Final Award II, which decided issues concerning awards of costs and attorney fees, as well as other questions that had been presented by the parties, the arbitrator "clarified" the operative portions of PFA I, writing as follows:

> [PFA I] paragraph 255(6) is hereby clarified with respect to the decretal statement therein to state that the paragraph employs the term "Optima" as a defined term, in accordance with PFA footnote 2 (for "all substantive purposes"), including affiliated companies; namely CECO, in accordance with PFA paragraphs 30 and 253(2).

Partial Final Award II dated Oct. 30, 2025, ECF No. 22-3, PageID.3050.

Although this portion of the record is ignored by the plaintiff, the arbitrator included in his PFA II a lengthy discussion of his findings on the precise question which the plaintiff now purports

to have this Court revisit and redetermine. The arbitrator wrote as follows concerning CECO's

"affiliate" accountability under the contract:

> [B]oth Ascion and Optima take the position that there is no ambiguity in the [PFA I] regarding CECO. Ascion stated its position in the August 13, 2025 Order 34 Report that "the PFA language is clear and requires no interpretation or modification." In support of that position in relation to CECO, Ascion marshals the findings/conclusions contained in the PFA beginning with footnote two (defining Optima) and paragraphs 28-30, as well as 253(6). Optima, adhering to its position that the *functus officio* doctrine is without applicable exception in this case, specifically acknowledged in the oral argument held on October 3, 2025 that there is no ambiguity in relation to footnote two defining Optima. Nevertheless, Optima maintains that since the PFA expressly references CECO in paragraph 253(2) as an affiliate, but not in 253(6) — which references Optima in adjudging/declaring breaches of the Ascion Supply Agreement and fixing damages from that liability — no liability attaches to CECO, which was neither a party to the arbitration, nor represented by counsel in the proceedings.
>
> Yet, Optima seeks in this one instance in the PFA to impute an entirely different meaning to "Optima" than is used in every other reference therein pursuant to footnote 2 and [the] Ascion Supply Agreement. In doing so, Optima basically draws a distinction without meaning with respect to the differing entity references used in PFA paragraphs 253(3) and (6). Optima's aberrational interpretation of the meaning in paragraph 253(6) does not withstand even the slightest scrutiny. To explain plainly and simply, the differing employment of terms in one PFA subparagraph adjudicates the precondition of affiliation [PFA (253)] to be a party to the contract that was breached, while the other subparagraph [PFA 253(6)] fixes liability and damages with respect to the contractually defined party. The PFA adopted and used the definition of Optima throughout the award "for all substantive purposes" — and "all" means exactly that, including in paragraph 253(6). Clearly, there can be no more "substantive" purpose in the adjudication of a breach of contract claim than the declaration of liability and fixing of damages, as in PFA paragraph 253(6).
>
> At bottom, there was only one exception to the definition of Optima contained in PFA footnote 2, which is inapplicable here. Optima's attempt to create another one through implied interpretation in its comparative construction of PFA paragraphs 253(2) and 253(6) is tantamount to an attempt to rewrite the PFA and its employment of a definition, which Optima admitted in argument is not ambiguous. Massachusetts rules of construction grant no such latitude and do not permit Optima to rewrite the plain import of the award through misinterpretation.
>
> There is no ambiguity, then, in the diction of the PFA from which to cull out from the liability/damages declarations in PFA paragraph 253(6) of any contracting entities. Indeed, Optima itself argued for joint and several liability based on the alleged (but unsuccessfully proven) "affiliation" with Ascion of Xienci and Dah

Sheng under the Ascion Supply Agreement's definition.  Given its own position in this arbitration on joint and several liability attaching as a matter of law from the contractual definition inclusion of affiliates, Optima's misinterpretation [in] support of its new position in that regard is unpersuasive, to put it mildly.  In the end, Optima's position on joint and several liability of affiliates proved to be a two-edged sword, which cut against it and CECO based on the evidentiary merits clearly determined in the PFA.  As a result of Optima's attempt to introduce uncertainty through a meritless interpretation, Ascion is entitled to clarifying declaratory relief.

Yet, although both Ascion and Optima maintained that the language of the PFA in relevant part is clear and unambiguous, which it is in fact, they nevertheless asserted contrasting views with respect to [the] implication[s] for CECO such that injunctive relief is sought.  However, this divergence results not from ambiguity as shown above, but rather from the fact that both parties ultimately blur the distinction between being a party to the Ascion Supply Agreement and being a party to this proceeding.  Optima attempts to rely on CECO's non-participation to now evade responsibility of the contractually defined entity — in spite of its own acknowledgement of arbitral jurisdiction to construe the Ascion Supply Agreement (i.e., affiliation), as well as its self-contradictory assertions about joint and several liability thereunder.

In contrast, Ascion, armed with the adjudication in the PFA of Optima (as defined) liability in paragraph 253(6), now seeks interim injunctive relief with respect to an entity that is a non-party to this proceeding — CECO.  As the PFA specifies in the procedural history, Ascion attempted to join CECO to the proceeding, but did so based upon an erroneous legal theory of CECO "successorship."  Order No. 26 disposed of that theory — but no other, including that of reaching CECO as an affiliate.  Still, Ascion at no time thereafter ever again sought to join CECO as a party affiliate to the proceeding.  As noted, Ascion simply preserved the contractual construction issue with respect to affiliation (for which there was jurisdiction acknowledged by Optima) and tried it successfully.

Nevertheless, Ascion's request for injunctive interim relief against CECO is now misplaced, since it is directed at a non-party to the arbitration.  Stated differently, Ascion resorts to the wrong forum in which to seek [to] enforce the legal consequences of the PFA's clear and unambiguous findings as to CECO affiliation and conclusion of Optima (as defined) liability, while Optima ignores the very law it asserted in this proceeding as to joint and several liability for breach of affiliates to contest those consequences in the wrong forum as well.

PageID.3041-46.

Optima now argues in this Court that the parts of the arbitration award relating to the purported liability of CECO should be "vacated" because the arbitrator exceeded his authority by "determining the rights" of entities that were not parties to the arbitration proceeding.  It also seeks

- 5 -

to relitigate whether CECO was a party to the supply agreement merely by virtue of its position as majority shareholder in Optima, which was obtained eight years after the Supply Agreement was executed between the parties.  The plaintiff also contends that if CECO is held accountable, the arbitration proceeding was "fundamentally unfair" because the arbitrator reached his decision construing the extent of liability based solely on Optima's "submission of the issue" to arbitration when it had argued that certain affiliates of Ascion should be held jointly and severally liable on Optima's claims, ignoring the fact that those other affiliates were joined as parties in the arbitration, while CECO was not.  And it says that part of the award is defective because the arbitration did not afford CECO an adequate opportunity to defend itself against liability.

The defendant disputes these arguments point by point, pointing out that a request to "partially" vacate an arbitration award amounts to a request to modify the award, which is governed by section 11 of the Federal Arbitration Act, not section 10, which refers to the grounds for vacating an award.  Ascion contends that there is no basis to modify *or* vacate the award, and it asks that the award be confirmed and that judgment on it enter.

II.

Before addressing the merits of the parties' arguments, a word about jurisdiction is appropriate.  The parties' invocation of the Federal Arbitration Act ("FAA") "is not sufficient to create federal question jurisdiction." *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 780 (E.D. Ky. 2014).  That is because "[t]he [FAA] is something of an anomaly in the field of federal-court jurisdiction.  It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25, n.32 (1983).  Therefore, federal courts must have an independent

jurisdictional basis for hearing a claim brought under the Act. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). The Court issued orders to show cause on this topic, and after a couple of false starts the parties eventually justified the exercise of subject matter jurisdiction based on the international nature of the underlying commercial transaction, which places the case within the express grant of federal question jurisdiction under 28 U.S.C. § 1331 and 9 U.S.C. § 203. The Court determined that it has subject matter jurisdiction over the present dispute for the reasons stated in the order dismissing the show cause orders. *See* Order Dismissing Orders to Show Cause, ECF No. 18. It incorporates that reasoning here.

III.

Under the FAA, "after an arbitral award has issued, federal courts may confirm, vacate, or modify such an award under § 9, § 10, or § 11." *Jules v. Andre Balazs Props.*, 608 U.S. ---, 146 S. Ct. 1209, 1215 (2026). The grounds for vacatur and modification are limited. "Section 10(a) permits a district court to vacate an arbitration award: '(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *In re Romanzi*, 31 F.4th 367, 374 (6th Cir. 2022) (quoting 9 U.S.C. § 10(a)). "[T]he FAA limits the grounds for modifying or correcting an arbitration award to these circumstances: (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded

- 7 -

upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. (c) Where the award is imperfect in matter of form not affecting the merits of the controversy." *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 696-97 (6th Cir. 2019) (quoting 9 U.S.C. § 11). There is no other basis for a court to tamper with an arbitrator's award. *Michigan Sugar Co. v. Bakery, Confectionery, Tobacco Workers, & Grain Millers Int'l Union*, 278 F. App'x 623, 628 (6th Cir. 2008) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) ("'A court's power to modify an arbitration award is confined to the grounds specified in [FAA] § 11,' which do not include 'manifest disregard of law.'") (quoting *NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995)).

The plaintiff has failed to establish any of the grounds for either vacatur or modification of the arbitration award. Moreover, it argues at length about legal principles that are inapplicable to the relief it seeks, ignoring the controlling caselaw holding that a motion to "vacate in part" an arbitration award is governed by the criteria for "modification" under 9 U.S.C. § 11, not the criteria for vacatur under 9 U.S.C. § 10. *NCR Corp.*, 43 F.3d at 1080.

The criteria for modification of an arbitration award are explicitly circumscribed by section 11 and applicable only where merely ministerial or clerical errors in the recitation of the award are identified. "Modification" of substantive relief expressly granted by the arbitrator is prohibited. *Michigan Sugar Co.*, 278 F. App'x at 628. The plaintiff here seeks to have the Court "modify" the award to excise substantive findings made expressly and supported by profusely reasoned

- 8 -

commentary in the arbitrator's award. That is simply not relief that the Court is empowered to grant under the FAA.

The Court "may make an order modifying or correcting the award upon the application of any party to the arbitration . . . [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted [or] where the award is imperfect in matter of form not affecting the merits of the controversy," and in so doing the Court may impose a modification of the award "so as to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11. As the Sixth Circuit has explained, these stringent criteria forbid the Court from altering any substantive provision of an award touching on the merits of the dispute submitted to arbitration. *NCR Corp.*, 43 F.3d at 1081 ("First, § 11 forbids modifying an award when the modification will affect the merits of the controversy. . . . Second, under the last paragraph of § 11, increasing the award to Acme would not 'effect the intent' of the award made by the arbitrator . . . [because it] would provide the windfall to Acme which the arbitrator expressly rejected.").

A.

The arbitrator in this case discussed at great length the precise question now brought before this Court (*i.e.*, CECO's status as a party to the Supply Agreement), and his award included explicit findings on the issue, both concluding that the issue properly was put before him for decision, and holding definitively against the plaintiff and rejecting all of the same factual and legal arguments that it now attempts to resurrect before this Court. The arbitrator found that the parties unanimously consented to have the term "affiliates" construed along with other terms integral to interpretation of the Supply Agreement, and he determined, contrary to the plaintiffs' position, that CECO fits the definition of "affiliate" under the contract. He wrote:

[A]lthough Optima argued otherwise, there is no question after trial that Optima is affiliated with CECO. Optima admitted, and it is not disputed, that CECO is Optima's parent/affiliate. The fact that Optima is CECO's affiliate is not a secret. Indeed, it is openly stated in CECO's annual reports. Thus, there is no reason to go through a Lombardi analysis with respect to CECO.

Moreover, as noted previously, Mr. Wang at times relevant to this proceeding was CEO contemporaneously of Optima and CECO. As such, he could not compartmentalize his knowledge that the affiliation issue continued to be raised by Ascion and was contested in the evidentiary submissions by Optima in this proceeding. Through Mr. Wang, CECO had constructive knowledge of this proceeding and the issues in it, since he was not only the CEO of both entities, but also the chief witness for Optima. As such, this is not a case of a third party unexpectedly having a meaningful issue — related to its relationship with the signatory of a contract being arbitrated — surface without an opportunity to have the issue contested in its interests on the merits. Here the record shows otherwise, as *Optima fought Ascion about its affiliation with CECO every step of the way, once it surfaced through the motion to join and continually thereafter*.

In view of the conclusion above in paragraph 14 with respect to the interpretation of Ascion's and Optima's intent to embrace future time periods for "fixing" affiliate status under the Ascion Supply Agreement, Optima is adjudged and declared to have been affiliated with. In contrast, at the time of the Ascion request to join CECO shortly before trial commenced with the initial exchange of witness statements, Optima's responses to Ascion's requests for admission, were less than clear about the amount of ownership — joint or otherwise — of CECO over Optima. CECO at times relevant to the Ascion claims in this proceeding from 2018 thru 2021 (when the events complained of by Ascion occurred) through to date. In rendering this adjudication, there is no valid complaint of a denial of due process. Optima properly conceded that the Sole Arbitrator had jurisdiction under the Ascion Supply Agreement to construe its terms. Among those terms at issue are the definitions of affiliates for Ascion and "Supplier" — that is, Optima. *Application of that construction to the facts in the evidentiary record to make findings was also recognized as within the Sole Arbitrator's competence, for the issue clearly arises under the Ascion Supply Agreement. Further, Optima was on notice of the continuing vibrancy of the affiliation issue through the jointly submitted "Key Disputed Issues to be Addressed in the Pre-Hearing Memoranda" and fully contested it on the merits thereafter. Finally, that disputed issue was resolved in circumstances where CECO had both constructive notice of it through Mr. Wang, as well as actual notice of the proceeding and the potential impact on its consolidated financials as reflected in Exhibits C-4 and 5.* As such, there is no due process denial in construing "affiliates" as used in the Ascion Supply Agreement to determine Optima's affiliation with CECO at times relevant hereto.

Partial Final Award I, ECF No. 22-2, PageID.2837-38 (citations omitted; emphasis added); *see also id.* at 2838 n.36 ("It bears repetition that CECO was not joined preliminarily as a party to the

- 10 -

proceeding because the sole ground asserted as the basis — successorship — was contrary to applicable law. But after a trial on the merits, CECO's interest in the construction of the contractual term 'affiliate' was fully contested by Optima as to [the] time at which the signatory parties' intent was fixed (in 2008) and, further, that the signatories were found to have used the term to embrace future affiliates.   There was no further contested issue as CECO was admitted to be affiliated with Optima by a testifying witness who was CEO of both Optima and its parent corporation CECO.").

The plaintiff contends that the issue of "CECO's liability" was "not submitted" to the arbitrator for decision.  Even a superficial perusal of the record, which the plaintiff attempts to ignore in its presentation, belies this meritless position.  There can be no question that the precise issue of construing the term "affiliates" under the agreement was exhaustively litigated by the parties before the arbitrator and conclusively resolved in the final award.  Judicial "modification" of that construction would inherently corrupt the merits finding and would not effectuate the intent of the arbitrator as clearly expressed in the written award.

B.

The plaintiff has not shown that the arbitrator acted in "manifest disregard" of any clearly established legal principle, or that he "exceeded his authority" by rendering a construction of the term "affiliate" under the Supply Agreement.  The plaintiff here has pointed to nothing more than factual and legal conclusions reached by the arbitrator that it dislikes and on which it wishes for the Court to render a "second opinion."   That sort of presentation does not come close to demonstrating "manifest disregard" for the law, which is what must be shown to justify vacatur of an arbitration award.

The "court's examination of an arbitrator's award is governed by 'one of the narrowest standards of judicial review in all of American jurisprudence.'"  *Leviathan Grp. LLC v. Delco*

- 11 -

*LLC*, 735 F. Supp. 3d 823, 827 (E.D. Mich. 2024), *aff'd*, No. 24-1547, 2025 WL 884085 (6th Cir. Mar. 21, 2025) (quoting *Lattimer-Stevens Co. v. United Steelworkers of Am.*, 913 F.2d 1166, 1169 (6th Cir. 1990)). "A mere error in interpretation or application of the law is insufficient," to justify vacating an award. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). "Rather, the decision must fly in the face of clearly established legal precedent. When faced with questions of law, an [arbitrator] does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Ibid.* "If [the Court] can find any line of argument that is legally plausible and supports the award then it must be confirmed," and "[o]nly where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Ibid.*

The plaintiff contends that the issue of "CECO's liability" was not submitted to the arbitrator, and that he therefore "exceeded his authority" by purporting to determine the same. That position is proven false by review of the arbitrator's written award, in which he *denied* the defendant's request for relief sought against CECO, including an injunction, finding that because CECO was not a party to the arbitration the arbitrator was not in a position to impose any remedy directly upon that entity. Partial Final Award II dated Oct. 30, 2025, ECF No. 22-3, PageID.3046 ("Ascion's request for injunctive interim relief against CECO is now misplaced, since it is directed at a non-party to the arbitration. Stated differently, Ascion resorts to the wrong forum in which to seek [to] enforce the legal consequences of the PFA's clear and unambiguous findings as to CECO affiliation and conclusion of Optima (as defined) liability, while Optima ignores the very law it asserted in this proceeding as to joint and several liability for breach of affiliates to contest those consequences in the wrong forum as well."). The arbitrator did not "disregard" the established

legal principle placing non-parties to the arbitration beyond his power to compel; to the contrary, the arbitrator scrupulously acknowledged and respected that principle by refusing to enjoin CECO directly when the defendant moved for that "extended" relief.

The plaintiff's reliance on *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299 (2d Cir. 1963), is misplaced because the plaintiff ignores the plain holding of that case, which is that an arbitrator exceeds his authority where the rights of non-parties are determined and "when that issue has not been submitted to him." *Id.* at 301 ("[A] decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator *when that issue has not been submitted to him* is not within the province of the arbitrator himself but only of the court.") (emphasis added). As shown above, the issue of whether CECO as a signatory's majority shareholder was embraced by the definition of "affiliates" expressly was submitted to, and decided by, the arbitrator. Where, as here, the undisputed record shows that an issue was extensively litigated in the arbitral forum, the resolution of that issue was not an act beyond the arbitrator's power to decide. *Orlogin, Inc. v. U.S. Watch Co.*, No. 90-1106, 1990 WL 364470, at *4 (S.D.N.Y. June 25, 1990) ("The issues of dissolution of the joint venture and termination of the Agreement were pled in the demand for arbitration, were argued to the arbitrators by the parties at the hearing and were referred to in Respondents' post-hearing brief. Despite Respondents' contention that the issue of dissolution was withdrawn from the panel, there is no indication on the record that any such withdrawal occurred. Indeed, the remarks of the panel throughout the arbitration, as well as in specifically directing the parties to address the issue of dissolution in their post-hearing briefs, belie the assertion that this issue had been withdrawn. Accordingly, the Court concludes that the issue of dissolution was not withdrawn from the arbitration.").

- 13 -

Moreover, contrary to the plaintiff's position, there is legal authority supporting the propriety of resolving accountability for an entity which, although a non-party to the arbitration, is found to be a party to the contract that is the subject of the arbitration. *Id.* at \*7 ("Apparently, Tabakow continues to be referred to as a separate entity within Gruen, and Orlogin, reflecting some confusion over the legal status of Tabakow after the merger, named only Tabakow in its demand for arbitration. Inasmuch as there is no dispute that Gruen, under the pseudonym of Tabakow, had notice of the arbitration and a full opportunity to present its case to the panel, this misnaming does not excuse Gruen from its obligations under the Agreement.").

The plaintiff's reliance on *NCR Corporation v. Sac-Co.*, 43 F.3d 1076, also is misplaced, because there the Sixth Circuit held that an award exceeded the arbitrator's authority because it purported to grant relief to non-party entities that were not only absent before the arbitrator, but also were not parties to the underlying contract and agreement to arbitrate. *Id.* at 1080 ("The parties agree that the arbitrator exceeded his powers when he awarded punitive damages to nonparties and that the magistrate judge properly vacated the punitive damages award to nonparties. . . . [T]he arbitrator exceeded his authority by resolving a dispute which may or may not have existed between NCR and its other nonservicing dealers, and by determining the rights of individuals who were not parties in the arbitration proceedings."). That is not the case here where the arbitrator found, based on the evidence presented and by applying well-worn principles of contract interpretation, that CECO properly was construed as an "affiliate" to the agreement regardless of its status as a non-signatory to the contract.

C.

The plaintiff has not identified any "due process" deficiency in the arbitration proceeding where it is beyond debate that the parties were afforded ample opportunities for exhaustive

- 14 -

litigation of the question of CECO's capacity as "affiliate" of the plaintiff. In order to satisfy the requirement for fundamental due process embodied in the FAA, 9 U.S.C. § 201, and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (Dec. 29, 1970), an arbitration proceeding must "'meet[] the minimal requirements of fairness — adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator' once the parties have had 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 756 (5th Cir. 2020) (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 299 (5th Cir. 2004)) "A fundamentally fair hearing is one that meets the minimal requirements of fairness — adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Karaha Bodas*, 364 F.3d at 298-99. However, "[t]he right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure." *Id.* at 299 (quotation omitted).

Other than passing allusions to "due process" concerns in its briefing, and the plaintiff's observation that CECO was not a party to the arbitration, the plaintiff has made no effort to demonstrate how the plaintiff itself — Optima Healthcare, Inc. — was deprived of any opportunity to present relevant evidence and argument concerning CECO's relationship to the plaintiff and in what way it might be implicated as an "affiliate" under the contract. "Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing." *National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir.1985). "Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators." *Nationwide Mut. Ins. Co. v.*

*Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002). It is undisputed here that the parties submitted hundreds of pages of briefing to the arbitrator, litigated and relitigated the issue of CECO's involvement in the Supply Agreement "every step of the way" throughout the arbitration, and had a week-long evidentiary hearing at which they were allowed to present testimony and argument before the arbitrator. "At the very least, [the plaintiff] had notice of [the defendant's] claims and an opportunity to present counter-arguments," and that is all that is required for a finding that the arbitration "procedure met the minimal standard of fundamental fairness." *Ibid.*

Because arbitration as a means of alternative dispute resolution is largely a matter of contractual agreement, courts must look to the contract language to determine what the parties bargained for in the way of the substance, process, and procedure that is applied to address their disputes. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (characterizing contractual arbitration provisions as "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). Parties are free to negotiate the terms of their arbitration process, including the specification of the issues to submit to arbitration, the number of arbitrators, the rules that will govern the procedure, the degree of detail required of the arbitrator's decision, the level of formality of the proceedings, and the reviewability of the arbitrator's decision. *Green v. Ameritech Corp.,* 200 F.3d 967, 976 (6th Cir. 2000); *see also Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021). They need not agree on the level of due process that is baked into normal court proceedings, and courts generally will accept the outcome of an arbitration proceeding as long as "a party to arbitration has [not] been denied a fundamentally fair hearing." *Nat'l Post Office Mailhandlers v. U.S. Postal Serv.,* 751 F.2d 834, 841 (6th Cir. 1985). If the parties negotiate for justice lite, then that is all they are entitled to. Here, the plaintiff

has not made any presentation on the precise procedural parameters embodied in the arbitration agreement, and it has made no effort to identify how the arbitration proceeding contravened the terms of the negotiated agreement for the dispute resolution procedure.

III.

Defendant Ascion has moved to confirm the arbitration award and enter judgment. Under section 9 of the FAA, the court must confirm the award where the award is not vacated, modified or corrected. *Wachovia Sec., Inc. v. Gangale*, 125 F. App'x 671, 676 (6th Cir. 2005) (citing 9 U.S.C. § 9) ("[T]he court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.") (emphasis added).

The plaintiff contends that no judgment should be entered against its affiliate, CECO. It is correct, insofar as that argument goes. The arbitrator did not enter an award against CECO, as it was not a party to the arbitration. In fact, the arbitrator expressly rejected Ascion's effort to join CECO as a party. It would have been beyond the arbitrator's authority to render any sort of award against CECO or any other non-party to the arbitration. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846-47 (6th Cir. 2003) (observing that "[a]n arbitration panel may not determine the rights or obligations of non-parties to the arbitration) (citing *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994); *Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Elec. Co.*, 793 F.2d 214, 216 (8th Cir. 1986); *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama*, 312 F.2d 299, 301 (2d Cir. 1963)). The arbitrator himself recognized that limitation when he denied Ascion's request to enter an injunction against CECO, observing that the parties attempted to "blur the distinction between being a party to the Ascion Supply Agreement and being a party to this proceeding." PFA II, ECF No. 22-3, PageID.3044.

- 17 -

Nonetheless, the plaintiff attempts to justify its request to vacate or modify the award with its trepidations about the ultimate enforcement of that award. Those are not issues that are properly before the Court in the context of an FAA vacatur, modification, or confirmation action. As the Sixth Circuit has explained, "[t]he usual office[] of the confirmation action under 9 U.S.C. § 9 is simply to determine whether the arbitrator's award falls within the four corners of the dispute as submitted to him." *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963). A motion to confirm the award is not the proper occasion to determine who should be bound by it. *Ibid*. ("[O]ur holding does not preclude Orion from prosecuting its action, still pending, against Signal as guarantor of Eastern Panama's obligations. Nor does it preclude Orion from bringing a separate action against Signal to enforce the award against Eastern Panama, invoking the 'alter ego' theory. But an action to confirm the arbitrator's award cannot be employed as a substitute for either of these two quite distinct causes of action.").

Here, as in *Orion*, the interpretational issue that the arbitrator decided fell squarely within the "four corners of the dispute" submitted for his decision, and that is all that concerns this Court in passing on the cross-motions to confirm or vacate the award. The plaintiff's lurking fears about the ultimate legal effect of that interpretational ruling are for decision on another day, in another case, possibly before another court. In any event, the award in this case entitles Ascion to a judgment against Optima and Optima alone.

IV.

The record does not support any ground to vacate or modify the arbitration award presented to the Court in the parties' motions. The defendant is entitled to confirmation of the award and a judgment against Optima Healthcare, Inc., the only other party to the arbitration proceedings.

Accordingly, it is **ORDERED** that the motions to vacate in part the arbitration award (ECF Nos. 1, 22) are **DENIED**.

It is further **ORDERED** that the motions to confirm the arbitration award and enter judgment (ECF No. 5, 25) are **GRANTED**.

It is further **ORDERED** that the parties shall furnish the Court with a calculation of the amount owing under the Final Award through July 31, 2026.  They shall submit a stipulation stating that amount no later than **July 28, 2026**.  If they cannot agree on an amount, then they shall submit supplemental briefs, not to exceed three pages, with their competing calculations **on or before July 29, 2026**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 23, 2026